No. 23-13706-JJ

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA HERRERA,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:20-CR-00079-SDG-RDC-1

## BRIEF OF APPELLEE
## THE UNITED STATES OF AMERICA

RYAN K. BUCHANAN
*United States Attorney*

GABRIEL A. MENDEL
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
(404) 581-6000

No. 23-13706-JJ

*United States of America v. Joshua Herrera*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to those listed in Appellant's brief, the following people
and entities have an interest in the outcome of this appeal:


Mendel, Gabriel A., Assistant U.S. Attorney

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
Statement.........................................................................................C-1

Statement Regarding Oral Argument ................................................ i

Table of Contents ............................................................................ ii

Table of Citations ...........................................................................iv

Statement of Jurisdiction................................................................vi

Statement of the Issues ................................................................... 1

Statement of the Case...................................................................... 2

    A. Course of Proceedings and Disposition Below..................... 2

    B. Statement of the Facts ......................................................... 2

       1. Offense Conduct ............................................................. 2

       2. Expert Testimony............................................................ 6

         a. Pre-Trial Motions ...................................................... 6

         b. Dr. Whitney's Testimony........................................... 8

       3. Sentencing...................................................................... 9

    C. Standard of Review .............................................................. 9

Summary of the Argument............................................................. 10

Argument and Citations of Authority ........................................... 11

1. The district court did not abuse its discretion in limiting Dr.
Whitney's expert testimony under Rules 704(b) and 403. ...... 11

    A. Dr. Whitney's expert testimony was properly limited under
Rule 704(b)......................................................................... 12

    B. Dr. Whitney's expert testimony was properly limited under
Rule 403. ............................................................................ 16

2.  The district court did not err in excluding testimony about how Herrera's girlfriend groomed herself before sex. ...................... 18

3.  Any error in limiting testimony about Herrera's general sexual interest in children was harmless. ............................................. 19

Conclusion ...................................................................................... 22

Certificate of Compliance and Service ......................................... 23

## TABLE OF CITATIONS

### Federal Cases

*Chapman v. Procter & Gamble Distrib., LLC,*
    766 F.3d 1296 (11th Cir. 2014) .................................................. 11, 12

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993) ................................................................. 12, 17

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997) ........................................................................ 11

*Rink v. Cheminova, Inc.,*
    400 F.3d 1286 (11th Cir. 2005) ....................................................... 11

*United States v. Archer,*
    531 F.3d 1347 (11th Cir. 2008) ....................................................... 14

*\*United States v. Crawford,*
    805 F. App'x 652 (11th Cir. 2020) ..................................... 13, 17, 21

*United States v. Frazier,*
    387 F.3d 1244 (11th Cir. 2004) (en banc).................................... 12

*\*United States v. Gillis,*
    938 F.3d 1181 (11th Cir. 2019) ......................................... 12, 13, 14

*United States v. Gladish,*
    536 F.3d 646 (7th Cir. 2008) .................................................... 15, 16

*United States v. Henderson,*
    409 F.3d 1293 (11th Cir. 2005) ....................................................... 20

*United States v. Hite,*
    769 F.3d 1154 (D.C. Cir. 2014)................................................. 14, 15

*United States v. Jernigan,*
    341 F.3d 1273 (11th Cir. 2003) ....................................................... 17

*United States v. Mathis,*
    264 F.3d 321 (3d Cir. 2001) ...................................................... 20, 21

*United States v. Reeves,*
    742 F.3d 487 (11th Cir. 2014) .......................................................... 9

*United States v. Stahlman,*
    934 F.3d 1199 (11th Cir. 2019) ....................................................... 15

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

**Federal Statutes**

18 U.S.C. § 2422(b) ............................................................ 2, 13

18 U.S.C. § 3231 ...................................................................vi

18 U.S.C. § 3553(a) ............................................................... 9

18 U.S.C. § 3742 ...................................................................vi

28 U.S.C. § 1291 ...................................................................vi

28 U.S.C. § 2111 ................................................................... 20

**Federal Rules**

Fed. R. App. P. 4(b)(1)(A) ..................................................vi

Fed. R. App. P. 32(a)(5) ..................................................... 23

Fed. R. App. P. 32(a)(6) ..................................................... 23

Fed. R. App. P. 32(a)(7)(B) ............................................... 23

Fed. R. App. P. 32(f) ......................................................... 23

Fed. R. Evid. 401 ........................................................... 7, 19

Fed. R. Evid. 402 ............................................................... 7

Fed. R. Evid. 403 ....................................... 1, 7, 8, 10, 11, 16, 17, 19

Fed. R. Evid. 702 ............................................................. 12

Fed. R. Evid. 704(b) ....................... 1, 7, 8, 10, 11, 12, 13, 16

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

No. 23-13706-JJ

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

United States of America,

*Plaintiff-Appellee,*

*v.*

Joshua Herrera,

*Defendant-Appellant.*

## STATEMENT OF JURISDICTION

(A) The district court had subject matter jurisdiction over the underlying criminal case based on 18 U.S.C. § 3231.

(B) The court of appeals has jurisdiction over this direct appeal from the judgment and sentence of the district court, under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

(C) While not jurisdictional, the notice of appeal was timely filed on November 8, 2023, within 14 days of the entry of the district court's judgment and commitment order, on October 27, 2023. Fed. R. App. P. 4(b)(1)(A).

(D) This appeal is from a final judgment and commitment order that disposes of all the parties' claims in this criminal case.

## STATEMENT OF THE ISSUES

1.  Though the district court allowed Herrera's expert witness to testify at length regarding autism and Herrera's diagnosis, it followed binding Circuit precedent and excluded the expert's proposed testimony that his assessment of Herrera showed no indication of sexual attraction to children. Did the district court abuse its discretion in excluding this testimony under Rules of Evidence 704(b) and 403?

2.  Did the district court abuse its discretion in sustaining a single objection during the testimony of Herrera's girlfriend, in which defense counsel asked her how she groomed herself before sex?

3.  Was any error in limiting testimony about Herrera's general sexual interest in children harmless, given the overwhelming evidence of Herrera's guilt?

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below

A grand jury in the Northern District of Georgia charged Herrera with one count of attempted enticement of a child to engage in child molestation in violation of 18 U.S.C. § 2422(b). (Doc. 10).

At trial, a jury convicted Herrera. (Docs. 127, 141-144). The district court sentenced Herrera to 235 months in prison. (Docs. 146, 147). Herrera is currently incarcerated.

### B. Statement of the Facts

#### 1. Offense Conduct

As part of an undercover operation, FBI Special Agent Megan Perry placed an ad on Fetlife.com—a website that hosted classified ads for people looking for sexual fetishes. (Doc. 142 at 395-399, 401-402, Gov. Ex. 10).[1] With the username "Daughter_Lover 11," SA Perry titled her post "No limits fun. Atlanta." (*Id.* at 399-401). "No limits" reflects no age limits or no limits to the activities. (*Id.*). The body of the ad stated, "Mom here looking for a like minded, no limits perv. Hit me up on Kik. Michelle P 00." (*Id.*). Kik is a mobile application for cellular phones like text messaging. (*Id.* at 401).

_____

[1] Transcript citations refer to the page number entered by the court reporter.

2

Two days after posting the ad, SA Perry received a message from Josh C. with the username "Arkanandra." (*Id.* at 403-404, Gov. Ex. 11). SA Perry later determined that the account belonged to Herrera, whose previous name was Joshua Crucillo. (*Id.* at 405).

Herrera's initial response was "Hey! I saw your post on Fet. What are you looking for?" (*Id.* at 406). SA Perry responded, ""Hey! How are you? I'm looking for something taboo with my daughter that I realize isn't for everyone, any age limits?" (*Id.*). Herrera responded, ""Not particularly. What is it? And I'm doing great. What's the thing you want to do?" (*Id.*).

Over the course of the next three months, SA Perry and Herrera exchanged more than 400 messages. (*Id.* at 404, Gov. Ex. 11). SA Perry—going by "Michelle"—explained to Herrera that she had an 11-year-old daughter named "Emmy" and was looking for someone to teach her daughter how to be with a man and explore her body. (*Id.* at 408-409, 411). When Herrera suggested he was interested in Michelle as well, SA Perry explained that it was not about her, it would just be with her 11-year-old daughter and that she wouldn't even need to be in the room. (*Id.* at 410-411, 413).

Herrera asked for a picture of "Emmy" and SA Perry sent an image of a young girl laying on a bed. (*Id.* at 412). Herrera then explained his lesson plans for this child, how he would introduce this child to sex.

3

(*Id.* at 412-427). Herrera said, "She can expect someone to lead her and answer her questions. It's not my first time and I'm willing to teach." (*Id.* at 414). When SA Perry asked if he would be uncomfortable with "Emmy" being 11-years-old, to give Herrera a chance to back out, Herrera responded, "I'm not uncomfortable." (*Id.*).

Herrera said that he wanted "Emmy" to be naked with him because she should be comfortable with her own anatomy as well as his, that he will teach her giving and receiving oral sex, her sensitive spots, a man's sensitive spots. (*Id.* at 418-419, 426). Herrera explained that this would eventually lead to penetration because the 11-year-old girl was not having her period yet, that he would use a condom because he would like to show her how to put one on, but he also wanted to show her what it feels like without one on. (*Id.* at 419, 427). When SA Perry wondered about Herrera being clean of sexually-transmitted diseases, he responded, "I have papers saying I am." (*Id.* at 419).

The conversation progressed and led to plans to meet up in person. (*Id.* at 421-432). Herrera asked about when the daughter gets out of school, asked if she's in middle school, and said he hopes she doesn't have too much homework on the day they plan to meet up. (*Id.* at 421-423, 429-430). They eventually decided to meet at a Waffle

House at 2250 Peachtree Industrial Boulevard, Duluth, Georgia. (*Id.* at 428-432, Gov. Ex. 1). Herrera got into his car and drove over 50 miles from Athens, Georgia. (*Id.* at 368, Gov. Exs. 2, 3). When Herrera arrived, he was met in the parking lot by law enforcement agents and taken into custody. (*Id.* at 369-371, 432).

Law enforcement agents observed a cellphone sitting on the center console of Herrera's car and seized it. (*Id.* at 375-381, Gov. Exs. 5, 6, 7). They obtained a warrant to search Herrera's phone and found the Kik application installed, registered to Josh C, and containing messages with SA Perry posing as "Michelle." (*Id.* at 445-450, Gov. Ex. 9). Herrera's phone also had a web browser open to a document containing the results of Joshua Crucillo's STD test. (*Id.* at 450). The phone also contained 30 images of child erotica and suspected child pornography. (*Id.* at 451-459, Gov. Ex. 13).

At trial, Herrera testified in his own defense. (Doc. 143 at 586). He claimed that he traveled to the Waffle House because he "thought there was a child in danger." (*Id.*). He admitted having a Fetlife account, and that he responded to SA Perry's post. (*Id.* at 595-596). He admitted participating in the Kik message conversation that SA Perry testified about, but claimed he was attempting to identify the mother so that he could save the child, though he never contacted police or otherwise reported the post or conversations. (*Id.* at 596-610,

624-629). He claimed not to know how child erotica or suspected child pornography photos got on his phone. (*Id.* at 614).

Herrera's girlfriend, Raina Cundiff testified. (*Id.* at 633-639). Herrera's counsel asked her "Before you had sex, was there anything about your appearance or the way that you had groomed yourself that you mentioned to him?" (*Id.* at 635). The government objected to this question and the district court sustained the objection. (*Id.*).

### 2. Expert Testimony

#### a. Pre-Trial Motions

The government did not call an expert witness at trial. While preparing for trial, Herrera's counsel learned from his mother that Herrera may suffer from autism spectrum disorder (ASD). (Doc. 90 at 1). Herrera's counsel sent the Government a report pertaining to a psychological evaluation of Herrera titled "Mental State at the Time of the Alleged Crimes" written by Dr. Tyler Whitney, a licensed clinical psychologist. (Doc. 102 at 1). Herrera explained that he wanted Dr. Whitney to testify to the following:

- Herrera has ASD, including an explanation of the methodology used to reach this diagnosis. (Doc. 109 at 1).

- Herrera did not receive a formal ASD diagnosis as a child, including the reason for the delayed diagnosis. (*Id.*)

- Herrera exhibits certain traits common in individuals with ASD. (*Id.* at 2).

- Herrera's behavior could be consistent with the inability of many autistic persons to imagine how others might view certain behavior. (*Id.* at 2-3).

- Herrera's behavior, though it may appear unusual to non-autistic persons, could fit Herrera's statement that he was trying to save the "daughter." (*Id.* at 3-4).

- Herrera's psychosexual assessment showed no indications that he has a sexual interest in children of either gender. (*Id.* at 4).

The government moved to exclude Dr. Whitney's testimony on the grounds that it violates the Insanity Defense Reform Act (IDRA) and Federal Rules of Evidence 401, 402, 403, and 704(b). (Docs. 102, 110).

In response, Herrera argued that he did not intend to argue that he could not form the requisite specific intent. (Doc. 104 at 2-3). Instead, Herrera claimed that Dr. Whitney's testimony will provide the jury with an "understanding of [ ] Herrera's neurological deficits," which, Herrera argued, is relevant to the jury's determination of whether he formed the requisite intent to entice a child. (*Id*).

After reviewing this Court's precedent, the district court found that "allowing this evidence for the limited purpose of evaluating Herrera's mens rea to commit the charged offense does not impermissibly side-step the IDRA." (Doc. 111 at 10).

By contrast, the district court found that Herrera's plan "to have Whitney testify to his finding that Herrera's psychosexual assessment

7

showed no indications that he has a sexual interest in children"
violated Rule 704(b). (*Id.* at 11). The court further held that—even if
admissible under Rule 704(b)—"its probative value is substantially
outweighed by the danger of unfair prejudice and is excluded under
Fed. R. Evid. 403." (*Id.*).

In particular, the district court found that "[t]he fact that Herrera's
assessment showed no indication of sexual attraction to children has
very little probative value to the questions the jury must resolve." (*Id.*
at 13). But the "potential prejudicial impact" was "substantial and
undue; it could confuse the issues and mislead the jury by causing it
to conflate Herrera's general propensity to commit sexual crimes
against children with his specific intent to commit the crime with
which he is charged in this case." (*Id.*). Thus, the court found, "Rule
403 alone is a sufficient and independent basis to exclude Dr.
Whitney's proffered testimony in this regard." (*Id.* at 14).

### b. Dr. Whitney's Testimony

Dr. Whitney was called as the defense's first witness and qualified
as an expert in the area of clinical psychology with a specialty in
autism spectrum disorder. (Doc. 143 at 504-511). Dr. Whitney
testified at length about ASD generally, how ASD affects a person's
demeanor, and how ASD is diagnosed. (*Id.* at 512-521). Dr. Whitney
also testified about being hired to evaluate Herrera, his determination

8

that Herrera had ASD, his observations of Herrera, and specific autistic traits that he found in Herrera. (*Id.* at 522-541).

### 3. Sentencing

Before sentencing, the Probation Office prepared a Presentence Report (PSR), to which the parties had no objections. (Doc. 156 at 4). Though the PSR did not recommend an obstruction enhancement, the district court found that it applied given Herrera's perjured testimony that his intent in traveling to the Waffle House was to save a child. (*Id.* at 8-10). With that enhancement included, Herrera's Guidelines range was 292 to 365 months in prison. (*Id.* at 10-11). The government argued for a low-end Guidelines sentence. (*Id.* at 11-14). Dr. Whitney testified again on Herrera's behalf. (*Id.* at 16-21). Herrera's counsel argued for a sentence of 200 months. (*Id.* at 23-24). The court sentenced Herrera to 235 months in prison and set forth its reasoning under the § 3553(a) factors. (*Id.* at 26, 28-31).

### C. Standard of Review

The district court's decision to admit or exclude evidence is reviewed for abuse of discretion. *United States v. Reeves*, 742 F.3d 487, 501 (11th Cir. 2014).

## SUMMARY OF THE ARGUMENT

Though the district court allowed Herrera's expert to testify at length about autism and Herrera's diagnosis, the court excluded proffered expert testimony about a psychosexual assessment that purported to show no indications that Herrera has a sexual interest in children. This proposed testimony conflicted with this Court's precedent and Rules of Evidence 704(b) and 403, and the district court did not abuse its wide discretion in excluding it.

The district court then allowed Herrera's girlfriend to testify about their six-year sexual relationship, their consumption of pornography, and the pornography she observed on his phone and computer. The district court did not abuse its discretion in sustaining a single objection during the testimony of Herrera's girlfriend, in which defense counsel asked her how she groomed herself before sex.

Even if the district court abused its discretion, any error was harmless given the overwhelming evidence of Herrera's guilt, including months of text messages with an undercover FBI agent, child erotica images found on Herrera's phone, and Herrera's own testimony at trial, which the jury was free to disbelieve.

Herrera's conviction should be affirmed.

10

## ARGUMENT AND CITATIONS OF AUTHORITY

**1. The district court did not abuse its discretion in limiting Dr. Whitney's expert testimony under Rules 704(b) and 403.**

The district court kept an open mind about allowing Herrera to call an expert psychologist and allowed—over the government's objection—extensive testimony about ASD generally and Herrera's ASD diagnosis and traits specifically.

But the district court excluded Dr. Whitney's proffered expert testimony about a psychosexual assessment that purported to show no indications that Herrera has a sexual interest in children. As discussed below, this proposed testimony conflicted with this Court's precedent, Rules 704(b) and 403, and was properly excluded.

This Court reviews the exclusion of expert testimony for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–43 (1997). The "considerable leeway" accorded to a district judge requires this Court to defer to the judge's decision on expert testimony, "unless it is manifestly erroneous." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citation and internal quotation marks omitted).

The deferential abuse-of-discretion standard "is applied stringently, even if a decision on expert testimony is 'outcome determinative.'" *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (quoting *Gen. Elec. Co.*, 522 U.S. at 142–43). Indeed, this

standard "is specialized and specifically addresses the narrow issue of the admission of reliable expert trial testimony rather than the general abuse-of-discretion standard implicated in other civil and criminal cases, which makes them not comparable." *Id.* at 1305 n.8.

## A. Dr. Whitney's expert testimony was properly limited under Rule 704(b).

Federal Rule of Evidence 702 compels district courts to perform a critical "gatekeeping" function to ensure that expert scientific or technical evidence meets certain standards for admissibility. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). In addition, Rule 704(b) states that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense" because "[t]hose matters are for the trier of fact alone."

Dr. Whitney proposed to testify about his psychosexual assessment of Herrera and his conclusion that Herrera does not have a sexual interest in children. But this Court has already held that such testimony violates Rule 704(b).

In *United States v. Gillis*, 938 F.3d 1181 (11th Cir. 2019), the defendant was charged—like Herrera—with attempting to knowingly induce or entice a minor to engage in sexual activity, in violation of

12

18 U.S.C. § 2422(b), a specific intent crime. And—like Herrera—the defendant sought to introduce expert testimony, based on a psychosexual evaluation, that he was not interested in prepubescent children. This Court affirmed the district court's exclusion of such testimony, agreeing that the expert's proffered opinion that the defendant "was not sexually attracted to prepubescent girls was simply a thinly veiled attempt by the defense to offer an expert opinion that [the defendant] lacked the requisite intent for" his § 2422(b) charge. *Id.* at 1195; *see also United States v. Crawford*, 805 F. App'x 652, 656 (11th Cir. 2020) (affirming exclusion of evidence under Rule 704(b) because "Crawford offers his expert's report and testimony for nearly identical reasons as Gillis did"). *Gillis* applies directly to Herrera's identical effort and forecloses this appeal.

Herrera makes a conclusory effort to distinguish *Gillis* on grounds that the "facts sought to be elicited by the defense were of a different nature" and "the scope of [the expert's] testimony appeared to be, at least potentially, far broader than what was proffered in this case." (Def. Br. at 13, 17). Herrera's brief does not elaborate on these purported distinctions, which cannot be squared with the plain holding of *Gillis*. Citing Rule 704(b), the same rule the district court relied on here, this Court stated:

> The district court determined that Dr. Sullivan's proffered
> opinion that Gillis was not sexually attracted to prepubescent
> girls was simply a thinly veiled attempt by the defense to offer
> an expert opinion that Gillis lacked the requisite intent for the
> enticement offense in Count 1. We see no clear error in the
> district court's determination that Dr. Sullivan's proffered
> testimony would do more than "leave[ an] inference for the jury
> to draw," and instead veered into the impermissible territory of
> offering an opinion on Gillis's mental state.

*Gillis*, 938 F.3d at 1195. The district court here reached the same

conclusion and did not abuse its discretion.

Nor is Herrera's cause advanced by his citations to precedent from

other Circuits. Not only are these cases factually inapt, they cannot

alter this Court's obligation to follow its own precedent.[2] In *United*

*States v. Hite*, 769 F.3d 1154 (D.C. Cir. 2014), cited repeatedly by

Herrra, the court held that the defendant's expert witness should have

been allowed to testify that the defendant did not suffer from any of

the psychiatric conditions that are "associated with a desire to have

sexual contact with children or that may predispose an individual to

---

[2] This Court's prior panel precedent rule holds that "a prior
panel's holding is binding on all subsequent panels unless and until it
is overruled or undermined to the point of abrogation by the Supreme
Court or by this court sitting en banc," and intervening Supreme
Court or en banc precedent can overrule a prior panel decision only if
it is "clearly on point." *United States v. Archer*, 531 F.3d 1347, 1352
(11th Cir. 2008).

want to engage in sexual activity with a child," and on the relationship between viewing child pornography and sexual interest in children. *Id.* at 1168. But the reasoning for admitting this testimony was that "the central focus of Hite's defense was that he was fantasist with no real sexual interest in children." *Id.* at 1169-70. The court concluded that the expert should have been allowed to testify because "it can shed light on what may be an unfamiliar topic to most jurors." *Id.* at 1170. The court explained that "[w]hile [the expert] may not testify that Hite lacked the requisite intent, expert testimony that generally explains the world of sexual fantasy on the [i]nternet is permissible." *Id.* (citation omitted). But this defense—that the text messages with the FBI agent were part of a sexual fantasy with no intent to act—was not Herrera's defense.[3]

Similarly, the Seventh Circuit in *United States v. Gladish*, 536 F.3d 646 (7th Cir. 2008)—in a case in which the evidence was merely of "explicit sex talk" with no travel by the defendant—would have permitted expert psychological evidence that, even if the defendant had expressed in the online chats an intent to engage in child sex

---

[3] In *United States v. Stahlman*, 934 F.3d 1199 (11th Cir. 2019), this Court—in dicta—recognized the possibility of a narrow "online fantasy" defense, citing *Hite* and *Gladish*. *Id.* at 1221, n.9. But the *Hite* or *Gladish* defense is not the testimony Herrera intended Dr. Whitney to offer and that testimony was properly limited under *Gillis*.

15

abuse, he had a psychological condition that led him to engage in "sexual gratification in Internet chat rooms and in watching pornographic films" without going further. *Id.* at 650. Setting aside whether such evidence could be properly admitted under this Court's precedent, this was not the defense presented by Herrera or the type of evidence proffered.

Instead, Dr. Whitney's testimony would have gone directly to the question of Herrera's intent in communicating with SA Perry and traveling to the Waffle House, a matter for the jury alone. Rule 704(b) and this Court's binding precedent precluded this effort and the district court did not abuse its discretion by excluding this evidence.

### B. Dr. Whitney's expert testimony was properly limited under Rule 403.

Even evidence admissible under Rule 704(b) is still subject to exclusion under Rule 403, which provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid. 403. Here, the district court found that "[t]he fact that Herrera's assessment showed no indication of sexual attraction to children has very little probative value to the questions the jury must

16

resolve." (*Id.* at 13). But the "potential prejudicial impact" was "substantial and undue; it could confuse the issues and mislead the jury by causing it to conflate Herrera's general propensity to commit sexual crimes against children with his specific intent to commit the crime with which he is charged in this case." (*Id.*). Thus, the court found, "Rule 403 alone is a sufficient and independent basis to exclude Dr. Whitney's proffered testimony in this regard." (*Id.* at 14).

Rule 403 decisions fall "squarely within the ambit of the district court's sound discretion." *United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003); *see also id.* ("[T]he district court is uniquely situated to make nuanced judgments on questions that require the careful balancing of fact-specific concepts like probativeness and prejudice."). And because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," the district court "in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

As the district court found, the proposed expert testimony had a potent risk of confusing the issues and misleading the jury by causing it to conflate Herrera's general propensity to commit sexual crimes against children with his specific intent to commit the crime with which he is charged in this case. *See Crawford*, 805 at 656 (finding that

17

the district court properly excluded evidence of the defendant's mental state that he had no sexual interest in minors because "the dangers that it would confuse the issues and mislead the jury substantially outweighed any arguable probative value"). The district court did not abuse its wide discretion.

## 2. The district court did not err in excluding testimony about how Herrera's girlfriend groomed herself before sex.

Herrera also offers a cursory complaint that the district court did not allow his girlfriend to testify "regarding their sex life." (Def. Br. at 11). But the record refutes this contention, as his girlfriend was permitted to testify about their six-year sexual relationship, their consumption of pornography, and the pornography she observed on his phone and computer. (Doc. 143 at 633-639). The district court sustained the government's objection to only a single question:

> Q. Before you had sex, was there anything about your appearance or the way that you had groomed yourself that you mentioned to him?
> A. Yeah. I had — I was not expecting us to have sex.
> MS. GABAY-SMITH: Objection, Your Honor.
> MR. YOUNG: Your Honor, this is directly related to his interest in children or whether he has it or not.
> THE COURT: Sustained.

18

(*Id.* at 635). The district court sustained no other objections to the girlfriend's testimony or exclude any proffered testimony from her. (*Id.* at 633-639).

Herrera's brief offers little argument on why the exclusion of an answer to this single question constituted an abuse of discretion. The grooming habits of Herrera's girlfriend before the first time they had sex could shed little light on whether Herrera intended to engage in the charged crime. If Herrera's argument was that his sexual interest was in adult women rather than children—which are not mutually exclusive and Herrera offered no evidence that they were—he admitted evidence that he had an active sexual relationship with an adult woman for six years and that he collected and viewed adult pornography. (*Id.* at 633-639). If Herrera was attempting to suggest that—because he did not have his adult girlfriend groom herself like a child—he did not have a sexual interest in children, this tenuous evidence was properly excluded under Rules 401 and 403.

Herrera fails to show any abuse of discretion and, as shown below, any error in excluding the answer to this single question was harmless.

**3. Any error in limiting testimony about Herrera's general sexual interest in children was harmless.**

Even if the district court abused its wide discretion in limiting Dr. Whitney's proffered expert testimony or sustaining the objection to a

19

single question of Herrera's girlfriend—and it did not for the reasons stated above—any error was harmless. This Court applies the harmless error standard to erroneous evidentiary rulings. *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005). An error is harmless unless it had a substantial influence on the case's outcome or leaves a grave doubt as to whether the error affected the outcome. *Id.*; *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

Here, the limitations the district court placed on Dr. Whitney's proffered expert testimony did not have a substantial influence on the outcome. *See, e.g.*, *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001) ("Although we believe that portions of [the expert's] proffered testimony should have been admitted, we also find that, in the context of the record as a whole, his testimony was highly unlikely to have caused a different result.").

First, Dr. Whitney was allowed to testify extensively about ASD generally, how ASD affects a person's demeanor, how ASD is diagnosed, his evaluation and determination that Herrera had ASD, his observations of Herrera, and specific autistic traits that he found in Herrera. (Doc. 143 at 504-541). Similarly, Herrera's girlfriend was

20

allowed to testify about their six-year sexual relationship and Herrera's interest in adult pornography. (*Id.* at 633-639).

Second, at the level of abstraction that Herrera's witnesses proposed to testify, there is little reason to think that this testimony—whatever Herrera's general sexual interest may have been—or his girlfriend's testimony about her grooming habits would have altered the jury's view of the evidence of guilt in this incident: the explicit messages that he exchanged with SA Perry, the STD test found opened on his phone, and the corroborating evidence of child erotica and suspected child pornography on his phone. *See Mathis*, 264 F.3d at 344 (even if excluded expert testimony would cause a jury to have "reasonable cause to doubt" a single witness, considering the corroborating evidence it was "highly improbable that a jury that voted to convict without the aid of [expert] testimony, would, had it heard that testimony, have reached a different verdict.").

Third, Herrera took the stand and testified about his intent and his sexual interests, which the jury was free to disbelieve and use as substantive evidence of his guilt. *See Crawford*, 805 F. App'x at 655 (finding "any error was harmless given the substantial evidence presented at trial, including Crawford's electronic messages and his testimony about his intent, which the jury was free to disbelieve").

21

The properly excluded testimony—abstract and of tenuous value—would not have changed the outcome of this case.

## CONCLUSION

The United States respectfully requests that this Court affirm Herrera's conviction and sentence.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*


/s/ Gabriel A. Mendel
GABRIEL A. MENDEL
*Assistant United States Attorney*

22

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 word processing software in 14-point Goudy Old Style.

This brief complies with the 13,000 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, according to the word processing software, it contains 4,635 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Today, this brief was uploaded to the Court's website using the CM/ECF system, which automatically sends notification to the parties and counsel of record:

> ADAM M. HAMES, ESQ.
> The Hames Law Firm LLC
> 511 East Paces Ferry Road, N.E.
> Atlanta, Georgia 30305

March 29, 2024

/s/ Gabriel A. Mendel
GABRIEL A. MENDEL
Assistant United States Attorney